## TAKAHASHI v. HECHT CO.
### No. 5062.

Court of Appeals of District of Columbia.
Argued March 9, 1931.
Decided May 4, 1931.

HITZ, Associate Justice, dissenting.

W. Gwynn Gardiner, of Washington, D. C., for appellant.

Wharton E. Lester, of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, HITZ, and GRONER, Associate Justices.

GRONER, Associate Justice.

This is an appeal from a judgment of the Supreme Court of the District in an action to recover damages for a false arrest and imprisonment.

Rosa Takahashi, who is appellant here, and whom we shall speak of as plaintiff, sued the Hecht Company, a corporation, appellee, whom we shall speak of as the defendant, to recover damages for false arrest and imprisonment. Her declaration alleges that in May, 1927, while she was in the store of the defendant, she was arrested at its instance, taken to the common jail, charged with the larceny of a diamond ring, searched, and thereafter confined for eighteen hours, and then, without trial, discharged from custody.

At the trial below, she testified: That she was at the time in question employed as a manicurist in one of the departments of defendant's store in the city of Washington. That, on the day of her arrest, she had, in the ordinary performance of her duties, waited on a woman customer, and that shortly thereafter this customer claimed to have lost a ring. That the store detective was sent for and interviewed plaintiff, who denied any knowledge of the ring, or any connection with its disappearance, and was told by him to return to her work and not leave the room. That shortly thereafter, and during the same day, plaintiff was directed to go up to the main office of the store, where she met a man whom she assumed to be the general manager, but who informed her he was a police officer. To him she repeated her statement previously made to the store detective that she knew nothing whatever about the loss, and was not guilty of the larceny of the ring. She was told by the police officer to remain where she was until he had spoken to defendant's general manager, and went to the latter's office for that purpose, and on his return took her into custody and placed her in jail, where she was subjected to indecent and outrageous treatment in an effort on part of the police to find the ring on her person. That she was released about eighteen hours after this. The ring, it appears, was subsequently found by the customer in her own clothes.

At the close of plaintiff's evidence, the lower court sustained a motion for a directed verdict, and this action of the court, together with certain exceptions taken to the refusal of the court to admit certain evidence offered in behalf of the plaintiff, constitute the only assignments of error.

In the view we take of the case, the trial court erred in the exclusion of the evidence referred to, and likewise erred in giving binding instructions for the defendant, and, since the two questions are closely related, we shall, for the sake of clarity, discuss them together.

While plaintiff was on the witness stand, and had testified that she had been instructed to go to the office of the general manager of defendant, and had met the police officer whom she assumed to be the general manager, and had been informed by him that he was a police officer, and had explained to him that she knew nothing about the disappearance of the ring, he said: "Just wait a moment. I am going in the next room and talk to Mr. Marlow" (the general manager), and then was asked by her counsel what happened from this point on. Counsel for defendant objected on the ground that any statement made by the police officer as a result of his visit to the general manager would be inadmissible, because neither what the officer said nor what he did would bind defendant, and the court sustained the objection on that ground, and refused to allow the witness to testify further. Counsel for plaintiff then offered to prove, if permitted to do so, that, after the officer had gone to the room of the general manager and talked to him, he came out and told plaintiff to get her hat and coat and go with him, and that at the same time one of the young ladies in the office of the general manager was sent out to go with her to the cloakroom, and stayed by her while she put on her hat, and walked back with her from that room to where the police officer was waiting, and whence she was taken to the police station.

And again, during the testimony of Mrs. Stewart, who was the manager of the department of the store in which plaintiff worked, the witness was asked by counsel for plaintiff whether the manager of the store or the police officer had talked with her about what should be done with plaintiff in connection with the matter, and she replied "Yes," but, upon objection by counsel for defendant, she was not permitted to tell what had been said.

We think that these questions were proper, and that the evidence sought to be elicited thereby was material in determining the real issue in the case; namely, whether plaintiff had been arrested without probable cause at the instigation of the responsible agents of the defendant. It is quite true that defendant's store detective, when called as a witness by plaintiff, had testified that, when he went

to the police station to secure the assistance of the police, he was accompanied by the customer who claimed to have lost the ring, and that he then and there stated to the officer to whom the complaint was made that it was not made at the instance of defendant; but we do not think this mere declaration, which obviously was designed for the purpose of avoiding liability in the event the suspicion attaching to plaintiff as the wrongdoer should prove, in case of her arrest, unfounded, was itself conclusive, or prevented plaintiff from showing by other evidence, if she could, that the arrest was in fact dictated or procured at the direction or request of a responsible agent of defendant acting within the scope of his employment. If such evidence was available to plaintiff, that is to say, if she was able to show that her arrest and imprisonment was directly or indirectly at the procurement of defendant, and was without probable cause, she would have established a cause of action. She had shown her arrest without warrant, and her detention, and the abuse of her person, and she had offered to show that this occurred after her denial of her guilt to the arresting officer, and after he had gone into the manager's office for the purpose of consultation with him. If such evidence had been admitted, the jury might very well have considered, without more, that the hesitation on the part of the officer then and there to make the arrest was due to the lack of evidence of guilt, or indeed of evidence that a crime had been committed, and that his subsequent action in making the arrest immediately after conference with the general manager was the result of instructions received through the latter, and, in this aspect, the burden would then have been on the defendant to establish the contrary, or that probable cause for the arrest existed; and so likewise we think that the trial court should not have refused to allow the manager of the department of the store in which plaintiff was employed to testify to statements made to her by the general manager or the house detective with relation to their action in connection with the arrest.

[3-5] We do not by any means lose sight of the fact that information given to a police officer, or that statements indicating that suspicion has been directed to a certain person, when made in good faith, are ordinarily privileged, and we recognize fully the duty of every person having any information with relation to the commission of a crime to bring this information to the notice of the police, but here the inquiry is broader—the question was not only what the responsible agents of defendant said, but what they did, and this fact was apparently within the knowledge of a person in defendant's employ whose duty it was to supervise plaintiff's work, and we think plaintiff was entitled to show, if she could, that it was directly or indirectly the cause of her arrest. There can be no serious contention here but that the general manager of defendant was clothed with authority to act in the premises, and if, without probable cause, he commanded the arrest or instigated the police officer to make it, defendant would be responsible, and we fail to see how else the plaintiff could prove this participation, if there was participation, except through the police officer, which of course would have been the ordinary and proper method of proof, or through the agents or officers of defendant who had participated in the event, or who knew the circumstances through which it was accomplished.

Relevant statements or admissions of an agent of a corporation, which are not confidential and privileged, and are within the scope of the agent's authority, are always admissible against the corporation. In such cases they become statements of a fact, and as such are binding on the corporation. This is more particularly true where they explain the acts of the corporation out of which the injury complained of arose. Steamboat Co. v. Brockett, 121 U. S. 637, 649, 7 S. Ct. 1039, 30 L. Ed. 1049.

Inasmuch as we think there was error in the rejection of the evidence offered in behalf of the plaintiff in the respects mentioned, we must consider the case on the motion for a directed verdict in the light of the admission of this rejected evidence, and, considered in that aspect, we have this case: A woman employee of previous good reputation and of several years' service, upon the reported loss of a ring belonging to a customer of her employer on whom she had waited, is first of all interviewed and questioned by the store detective, and told she must not leave the room in which she worked. A little later she is sent to the company's principal office, where she is confronted by a police officer who interrogates her, and who then, after privately interviewing the general manager in his private office, is accompanied therefrom by another employee who, obviously for the purpose of preventing either her escape or her concealment of the evidence of her guilt, goes with her while she gets her hat and coat. She is then arrested, without

warrant, taken from the store to the police station, treated like a common felon, and detained until the next afternoon, when she is discharged.

■ If defendant, in an effort to protect its customers from the loss of their property while in its store, believing plaintiff guilty, had set in motion the machinery of the law to have her brought to trial, in the ordinary course of things it would have acted precisely as the evidence shows it did, and if it did, and with no greater cause than is shown by the evidence here to justify its action, then the plaintiff was entitled to recover, and, on the showing above by her, with nothing to the contrary save the statement of the store detective that he had taken the customer complaining of the loss to the station house with him, and had there declared that his employer was not responsible for the complaint, we think a case was made sufficient for submission to a jury. As we have already had occasion to say in Adams v. W. & G. R. R. Co., 9 App. D. C. 26, 30: "The court is never justified in directing a verdict except in cases where, conceding the credibility of the witnesses and giving full effect to every legitimate inference that may be deduced from their testimony, it is nevertheless plain that the party has not made out a case sufficient in law to entitle him to a verdict and judgment thereon." See Glaria v. Washington Southern R. R. Co., 30 App. D. C. 559, and Chesapeake Beach Ry. Co. v. Brez, 39 App. D. C. 58. It may well be that, when the case is again tried, the acts and things shown to have been done by defendant's responsible agents will be satisfactorily explained, and the inferences, which it now seems to us the jury might have drawn therefrom, will no longer follow, but, with the case as made, we think there was enough to take it to the jury.

For the reasons stated above, the judgment below must be reversed, and the case remanded for a new trial to be had not inconsistent with this opinion.

Reversed.

HITZ, Associate Justice (dissenting).

I am unable to concur in the judgment of the court in this case.

While I agree that the appellant was treated with much harshness in view of the event, for which she may well have a cause of action against the complaining witness or the police authorities, I see nothing in the evidence received or proffered sufficient to render the defendant below responsible for the occurrence.

Several minor questions were attempted here, but they mainly concerned rulings of the trial judge in reasonable restraint of fishing excursions, which were clearly within his discretion.

But the case turned on his refusal to permit the plaintiff to testify as to what the detective officer from police headquarters said and did to her after the owner of the ring had complained to him at headquarters of its supposed theft.

After the customer discovered the disappearance of her ring, the matter was called to the attention of Mrs. Stewart, manager of the manicuring department, and of Mr. Evans, the store detective in the store.

Mrs. Stewart told the plaintiff to go back to her work and not to worry; Mr. Evans told her to go back to work and not leave the room, all of which she apparently did.

Shortly thereafter the customer and Mr. Evans went to police headquarters together, where they saw Detective O'Day, who gave the following clear account of their interview:

"Mr. Evans told witness at headquarters that this woman with him 'lost some jewelry down in the store and he wanted me to—impressed upon me the Hecht Company had nothing at all to do with it.'

"Q. Repeat as nearly as you can what was said? A. He said, 'This woman wants to report a ring that she claims has been stolen from her while having her hands manicured.' I took the report and went to the Hecht Company—

"Q. Was that all that he said to you? A. Yes, sir.

"Q. Now you also said a minute ago he tried to impress upon you. Tell us what he said. A. He said, 'You know Hecht & Company ain't making this complaint, we ain't in this at all.' "

Detective O'Day then had a further conversation with the customer, concerning which the record is silent, and three quarters of an hour thereafter went to the Hecht store.

A little later Mrs. Stewart told the plaintiff to go down to the manager's office, where she went alone, and where she found detective O'Day, to whom she talked, thinking he was the manager, and who later arrested her.

The plaintiff was then asked what Mr. O'Day said and did to her, but the court declined to admit such testimony on the ground

that the plaintiff had not yet shown any connection of the defendant, Hecht Company, with the arrest; whereupon the plaintiff made the following tender of testimony:

"Plaintiff went to the office of the manager where she saw a man who told her he was Mr. O'Day from police headquarters. He took her in a room and asked her about the matter and she told him what she had told Mr. Evans. He then came out of the room and told her to go and get her hat and coat. One of the young ladies in the office of the general manager of the Hecht Company, whose name plaintiff does not know, came out of the office and went with her to the cloak room and stayed by her while she put on her coat and hat and walked with her from that room back to where Mr. O'Day was. She then accompanied Mr. O'Day to police headquarters where she was again asked about the transaction. She was then locked up. * * *"

If all this tendered testimony had been received and added to the testimony given, it would still fall far short of establishing the liability of the defendant for what was done.

The plaintiff declined to offer anything further, and a verdict was directed for the defendant under the rule long ago established by this court in Prigg v. Lansburgh, 5 App. D. C., at page 37, where it was said:

"3. The court did not err in directing the the return of a verdict for the defendants upon the evidence submitted by the plaintiff. This evidence is stated with sufficient fullness in the preliminary statement and need not be repeated. Without intending to intimate an opinion as regards the guilt or innocence of the appellant of the offense charged against him, or to decide that there was probable cause for his prosecution, we hold there is not sufficient evidence in the record to warrant a finding that the appellees actually arrested the appellant or commanded or requested the officer, Raff, to do it. It is true that the facts were reported to Police Headquarters, and Raff came to investigate them. He heard the statements, examined the accused and made the arrest. There is no evidence to show that he did so at the request or under the persuasion of appellees, or any one of them, and the reasonable inference from all the evidence is that he made the arrest in the exercise of the discretion conferred upon him, according to the evidence of the chief of police.

"Mere information to the officers of the law by a citizen tending to show that an of-fense has been committed and that some person named may be suspected of its commission, is not sufficient, of itself, to warrant the inference that the informer or his agents participated in the unlawful arrest and imprisonment of the accused by the officer."

To increase the hazard of a citizen reporting a suspected crime to the public authorities is not in the public interest, but the present decision extends that hazard to the bystanders, even while they protest.

I think the judgment should be affirmed.