### KINCHLOW v. PEOPLES RAPID TRANSIT CO. et al.*

No. 6540.

United States Court of Appeals for the District of Columbia.

Decided Dec. 21, 1936.

Rehearing Denied Feb. 3, 1937.

Henry Lincoln Johnson, Jr., of Washington, D. C., for appellant.

*Writ of certiorari denied 57 S.Ct. 926, 81 L.Ed. —.

Frederic D. McKenney, John S. Flannery, G. Bowdoin Craighill, and R. Aubrey Bogley, all of Washington, D. C., for appellees.

Before MARTIN, C. J., and ROBB, GRONER, and STEPHENS, JJ.

MARTIN, C. J.

This is an appeal by Mamie Kinchlow (colored), plaintiff below, from a judgment upon a directed verdict in favor of the defendants, in an action brought by her to recover damages because of her ejection from a bus, while in the State of Virginia, on which she was traveling from the city of New York to Norfolk, Va.

The declaration contained three counts, charging: First, a breach of a contract of carriage; second, a wrongful ejection from the bus; and, third, false imprisonment, alleging that the plaintiff's ejection from the bus was upon the order and at the request of the driver of the bus, while acting as the agent, servant, and employee of the defendants.

The defendants by their pleas admitted that the plaintiff was "removed" from the bus and placed under arrest by officers of the law of the State of Virginia, but denied that she was so removed and arrested by order or request of defendants, or of their agent, servant, or employee. The defendant, Peoples Rapid Transit Company, a corporation, also alleged that at the time of the occurrence complained of the plaintiff was a passenger in a bus operated by the defendant Richmond Greyhound Lines, Inc., which was an entirely distinct and separate corporation and not under the management or control of this defendant.

The evidence submitted by the plaintiff at the trial consisted of her own testimony only, the salient statements of which are as follows: That on August 1, 1932, she purchased at the Greyhound Bus Terminal in New York a round-trip ticket from New York to Norfolk; that she was assigned to seat No. 29, which was the last seat in the rear on the right side of the aisle over the wheel; that she was told that the ticket would take her straight through and that she could go on the same bus and have the same seat; that she accepted and paid for the ticket and took the seat; that she had noticed an advertisement of the Greyhound Bus Lines in the bus terminal which set out in substance that the Greyhound Line was a sin-

gle system of bus transportation; that there was no inconvenience of changing from one bus to another; that a passenger might travel from coast to coast and go "Greyhound" all the way; that she got in the bus and occupied the seat assigned to her until the bus arrived in Washington, D. C., when she was instructed to take a bus just in the rear of the one she had been riding on; that this bus had the same color scheme, painting, design, and arrangement as the first one; that she took the same relative seat in the second bus as she occupied in the first bus; that when she left Washington the driver said, "You got to get up"; that she did not answer him, but a colored girl in the seat in front of her asked permission to sit beside her, which she did; that the driver came back and said to plaintiff, "Nigger, you've got to get up"; that she said, "I am not moving, there is no place for me to sit, do you want me to sit on top of the bus," and the bus driver said, "You just as well get up, I will pick you up"; that when the bus got over the bridge and into the State of Virginia the driver left the bus and came back with three policemen; that "they handles us very rough"; that when she got to the officer's car she said: "This is a shame. My mother is lying down there dead; I've got to go home." And one of the officers said: "Girlie, I am sorry, it is a tough break, you just got hold of a tough driver." That she was taken to the police station and put in jail until the trial the next day; that she was fined $25; that she did not continue to Norfolk as her mother had been buried, but went to Williamsburg, Va., and from there back to New York.

On cross-examination the plaintiff further testified that she did not resist the officers; that she did not get hysterical, she only cried; that none of them touched her.

The plaintiff thereupon rested her case.

The defendants on their part called Campbell W. Gray, the driver of the bus, as their first witness, who testified in substance as follows: That he knew the plaintiff; that she and another person occupied the right rear aisle seat; that the bus was fully loaded; that he had three colored passengers sitting on the back seat along with two white passengers, and that he asked plaintiff and the colored girl beside her if they would mind exchanging seats with the two white women in the rear seat; that they refused; that he said, "You can stay where you are right here in the District but we will cross the state line in a few minutes and to avoid moving when we get over there I thought you would just as soon take your seats now as to stop when we cross the Virginia State Line"; that when the line was reached he went back to them, pointed to the marker, and told them that under the Virginia law they were to move back; that they said they would not move back; that he proceeded on to Alexandria and stopped at the George Mason Hotel and called police headquarters; that in response to the call, Officers Snoots and Stewart came; that when they arrived he pointed out where the women were sitting; that he had no further conversation with the two colored women; that the officers asked them to move and they said they would not move; that the officers told the women that they would have to get off and the women said they would have to be taken off; that the women were talking in a loud and profane manner, and that the officers arrested them, using quite a bit of force; that he drove the bus on to Richmond; that at the request of the officers he returned the next day and testified at the trial in police court; that he did not at any time place his hands on the plaintiff or yell or threaten her; that he did nothing with respect to the ejection of the plaintiff, except that he summoned the officers; that he did not ask the plaintiff to get up and stand without offering her another seat, but that he particularly asked plaintiff to exchange her seat with the white women; that he did not remember plaintiff saying, "Where am I going to sit, on top of the bus?"

Defendants next called John L. Stewart, a police officer of Alexandria, Va., who testified in substance as follows: That on or near noon, August 2, 1932, he was told to go to the George Mason Hotel and meet the bus there; that he and Officer Snoots met the driver outside the bus, and the driver pointed out to them the two colored women who had refused to exchange seats; that he then proceeded to the back of the bus and asked them to change seats with the two white women who were seated in the rear of the bus, explaining to them that it was the law of the State of Virginia; that he told them the easiest way was the best way; that plaintiff said that she was not going to move, using profane language; that she

said, "I am not going to move any damn place; now if you want me to move, damn you, you try to move me"; that he objected to this language and placed her under arrest, whereupon she said, "You poor white trash from Virginia think you can do us any way"; that he was met by resistance, kicking, and pulling, when he arrested her and that he asked Officer Snoots to assist him in removing her from the bus; that his clothing was torn by plaintiff; that on arrival at the station he charged the plaintiff with disorderly conduct; that plaintiff was tried, found guilty, and fined. Witness on cross-examination testified that the bus driver took no part in ejecting the plaintiff nor did he make a request that they take her off; and that the charge of disorderly conduct against the plaintiff was based on what happened after he asked her to move.

Wesley Snoots, the other arresting officer, was called as a witness by the defendants and corroborated in all details the testimony of Officer Stewart.

Defendant Peoples Rapid Transit Company called as a witness, Linwood C. Major, who testified in support of the special defense made by that defendant.

The defendants thereupon moved the court for a directed verdict upon the following statement made by their counsel: "The plaintiff and all of the witnesses for the defendant also indicate that this bus driver did nothing more or less than report this matter to the police. Whether or not the Virginia statute is followed as relates to interstate commerce is beside the point. I think it is not necessary even to go into that." The court sustained this motion and directed a verdict for the defendants, judgment was entered thereon, and the present appeal was taken.

We think the ruling of the trial court was correct.

Section 4097bb of the Virginia Code of 1930 reads as follows:

"§ 4097bb. *Driver may change designation of seats.*—The driver, operator or other person in charge of any motor vehicle above mentioned, shall have the right, and he is hereby directed and required at any time when it may be necessary or proper for the comfort and convenience of passengers so to do, to change the designation so as to increase or decrease the amount of space or seats set apart for either race; but no contiguous seats on the same bench shall be occupied by white and colored passengers at the same time; and said driver, operator or other person in charge of the vehicle, may require any passenger to change his or her seat as it may be necessary or proper; the driver, operator or other person in charge of said vehicle who shall fail or refuse to carry out the provisions of this section shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined not less than five dollars nor more than twenty-five dollars for each offense."

Section 4097dd of the Virginia Code of 1930 reads as follows:

"§ 4097dd.. *Violation by passengers; misdemeanor; ejection.*—All persons who fail while on any motor vehicle carrier, to take and occupy the seat or seats or other space assigned to them by the driver, operator or other person in charge of such vehicle, or by the person whose duty it is to take up tickets or collect fares from passengers therein, or who fail to obey the directions of any such driver, operator or other person in charge, as aforesaid, to change their seats from time to time as occasions require, pursuant to any lawful rule, regulation or custom in force by such lines as to assigning separate seats or other space to white and colored persons, respectively, having been first advised of the fact of such regulation and requested to conform thereto, shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined not less than five dollars nor more than twenty-five dollars for each offense. Furthermore, such persons may be ejected from such vehicle by any driver, operator or person in charge of said vehicle, or by any police officer or other conservator of the peace; and in case such persons ejected shall have paid their fares upon said vehicle, they shall not be entitled to the return of any part of same. For the refusal of any such passenger to abide by the request of the person in charge of said vehicle as aforesaid, and his consequent ejection from said vehicle, neither the driver, operator, person in charge, owner, manager nor bus company operating said vehicle shall be liable for damages in any court."

It is contended by appellant that these statutes of Virginia are in violation of article 1, § 8, cl. 3, of the Constitution of the

United States, known as the commerce clause, and are therefore void, and it is argued accordingly that neither the driver of the bus nor the police officers derived any authority from them to compel the two colored women to remove from one seat to another in the bus. However, we think that this contention is not decisive of the issue made in this case.

It should not be overlooked that under section 4097bb, supra, it is made the duty of the driver of such a bus to require a segregation of passengers such as he had requested of the plaintiff in the present case, and that in event of his failure to perform this duty he would be guilty of a misdemeanor under the laws of the state and punishable upon conviction by a fine of $25. The driver of the bus knowing of the statutes did not assume to decide whether they were constitutional or not but called upon the policemen as officers of the peace to act in the matter. The driver took no part in the actual ejection of the passengers from the car, nor did he order or request the policemen to eject the plaintiff. The ejection resulted from the disorderly conduct of the plaintiff when ordered by the policemen to remove her seat in the bus. The arrest accordingly was not because of a violation of the Virginia statutes relating to the segregation of the races while travelling in the bus. It was upon the charge of disorderly conduct that the plaintiff was taken into custody and convicted at the trial by the Virginia court. Under these circumstances which the court held to be conclusively sustained by the evidence, the court was right in holding that the driver of the bus was not responsible for the ejection of the plaintiff from the bus and consequently that no responsibility for this attached to either of the defendants in the case.

In Prigg v. Lansburgh, 5 App.D.C. 30, 38, we held:

"Mere information to the officers of the law by a citizen, tending to show that an offense has been committed and that some person named may be suspected of its commission, is not sufficient, of itself, to warrant the inference that the informer or his agents participated in the unlawful arrest and imprisonment of the accused by the officer.

"The circumstances under which a court is justified in directing a verdict are well settled. 'When the undisputed evidence is so conclusive that the court would be compelled to set aside a verdict returned in opposition to it, it may withdraw the case from the consideration of the jury and direct a verdict.'"

In Takahashi v. Hecht Co., 60 App.D.C. 176, 178, 50 F.(2d) 326, 328, we said: "We do not by any means lose sight of the fact that information given to a police officer, or that statements indicating that suspicion has been directed to a certain person, when made in good faith, are ordinarily privileged, and we recognize fully the duty of every person having any information with relation to the commission of a crime to bring this information to the notice of the police, * * *."

Error is assigned because of the ruling of the court permitting an amendment to the plea of the Richmond Greyhound Lines, Inc., after the jury was sworn but before the statement of the case or the admission of evidence at the trial. It appears that the separate plea of the corporation, after citing section 4097dd, supra, contained the following allegation: "Defendant admits that plaintiff was held in jail, convicted and fined by the Virginia authorities for an alleged violation of said statute." Upon motion of defendant the court granted it leave to amend its plea by striking out the words "for an alleged violation of said statute." This motion was made and granted upon the ground that the defendant when drafting its plea was not aware of the fact that the arrest of the plaintiff was made upon the ground of disorderly conduct and not for an alleged violation of the Virginia statute. It is contended by appellant that it was error for the court to permit of such amendment under these circumstances. We cannot, however, sustain this assignment of error. In section 399, D.C.Code, as amended June 30, 1902, 32 Stat. 530 (D. C.Code 1929, T. 24, § 61), it is provided that amendments of pleadings may be permitted by the court "at any stage of the case." The matter is thus committed to the sound discretion of the trial court and we do not think there was an abuse of this discretion in this case. Moreover, the plaintiff although objecting and excepting to the order allowing the amendment nevertheless made no application for a continuance because of this amendment but proceeded without further objection to the trial of the case. And it cannot be as-

sumed that the plaintiff's counsel was surprised by the amendment inasmuch as it was based upon a record which was doubtless known to the counsel and admitted of no dispute. We therefore find no error in this ruling of the court.

Error is assigned by appellant because of the admission in evidence of the record of the trial of appellant by the Virginia court, whereby it appeared that appellant was arrested for disorderly conduct and not because of a refusal to obey a segregation order. We think this assignment is not well taken. In Thompkins v. Missouri, K. & T. Ry. Co. (C.C.A.) 211 F. 391, 396, 52 L.R.A.(N.S.) 791, it is said: "In an action for both actual and punitive damages for causing the ejection of a passenger from a train, his arrest and his fine by a justice of the peace, the complaint, warrant, and a transcript of the record of the justice are, after the plaintiff has testified to the proceedings before him, admissible evidence to show what the proceedings were and who conducted them and to mitigate the damages or to defeat the claim therefor; Beckwith v. Bean, 98 U.S. 266, 279, 280, 25 L.Ed. 124; Woodall v. McMillan, 38 Ala. 622, 624."

In view of our conclusion as above set out it seems unnecessary to discuss in detail whether the Peoples Rapid Transit Company is a separate corporation and not liable for the wrongful conduct, if any, committed by an employee of the Richmond Greyhound Lines, Inc., inasmuch as the failure of proof tending to show unlawful conduct on the part of the driver of the bus constitutes an effective defense for both corporations.

The judgment of the lower court is affirmed.

GRONER and STEPHENS, JJ. (concurring).

In Prigg v. Lansburgh (cited in the opinion) we held that when a person does nothing more than notify officers of the law of an apparent violation of the law, such person is not answerable for an arrest made by the officers on their own initiative, even though such arrest be wrongful. The evidence here, as is fully pointed out in the opinion of the court, brings this case directly within the holding in the Prigg Case. We feel bound by that case and for that reason concur in the affirmance.