**TRAVELERS MUT. CASUALTY CO.** et al.
**v. RECTOR** et al.

No. 12548.

Circuit Court of Appeals, Eighth Circuit.

Nov. 5, 1943.

Edgar Musgrave, of Des Moines, Iowa (Allen Whitfield and Walter W. Selvy, both of Des Moines, Iowa, and Daniel J. Gross and Bryce Crawford, Jr., both of Omaha, Neb., on the brief), for appellants.

Alfred C. Munger, of Omaha, Neb. (Varro H. Rhodes, of Omaha, Neb., and James Madison, of Bastrop, La., on the brief), for appellee Zelma Rector, individually, and as tutrix for the minor, Patricia Ann Rector.

Raymond M. Crossman, of Omaha, Neb. (J. J. Hess, of Council Bluffs, Iowa, and Ralph·M. West and John L. Barton, of Omaha, Neb., on the brief), for appellee Ford Brothers Van & Storage Company.

Francis S. Gaines, of Omaha, Neb. (Edward J. Shoemaker, of Omaha, Neb., on the brief), for appellees Allied Van Lines, Inc., and Hartford Accident & Indemnity Co.

Before SANBORN and RIDDICK, Circuit Judges, and LEMLEY, District Judge.

SANBORN, Circuit Judge.

Ford Brothers Van and Storage Company, a Nebraska corporation (hereinafter referred to as the Ford Company), is a carrier of freight by motor vehicle. On September 6, 1937, a tractor-trailer truck owned by it, and being driven by one of its employees, collided with an automobile near Bunkie, Louisiana. The occupants of the automobile were James Rector, Harley Rogers, Jr., and Mildred Rogers, his wife. They were all injured, and James Rector (the husband of appellee Zelma Rector) died of his injuries. The driver of the tractor-trailer at once notified the Ford Company, at Omaha, Nebraska, of the accident, and the company notified John N. Eddy, the agent of the Travelers Mutual Casualty Company (of Iowa), at Council Bluffs, Iowa. This insurance company, which will be referred to as the Travelers, had in force a policy of liability insurance issued to the Ford Company covering the tractor-trailer. Eddy immediately notified the Travelers of the accident, at its home office in Des Moines, Iowa. On September 7, 1937, the Travelers advised its claim adjuster at Omaha that its policy did not cover the tractor-trailer while being operated in Louisiana, and the adjuster notified Eddy and the Ford Company of the Travelers' position.

A suit was brought against the Ford Company and others in a state court of Louisiana by Zelma Rector, on her own behalf and on behalf of her minor daughter, to recover damages for the death of James Rector. Harley Rogers, Jr., and Mildred Rogers also brought suits in the same court against the same defendants to recover damages. The Travelers, which was not licensed in Louisiana, refused to investigate or to defend these suits, and the Ford Company conducted its own defense, at its own expense. Zelma Rector obtained a judgment against the Ford Company for $10,000, and each plaintiff in the two Rogers suits secured a judgment against it for $250. The judgments provided for the payment of interest and costs. Executions upon the judgments were returned unsatisfied.

Zelma Rector thereafter brought this action in the United States District Court for the District of Nebraska to recover upon her Louisiana judgment. She joined as defendants the Ford Company, the Travelers, and the Hawkeye Casualty Company, an Iowa insurance company (hereinafter

referred to as the Hawkeye), which is the reinsurer and successor of the Travelers. She asserted that the liability policy of the Travelers covered the tractor-trailer at the time and place of the accident, and that, by the terms of the policy, Travelers was liable to her for the amount of her judgment.

The Ford Company, in its answer, while asserting lack of jurisdiction and denying that Zelma Rector owned the judgment in suit, cross-claimed against the Travelers and the Hawkeye for the expenses the Ford Company had paid in connection with the defense of the Louisiana suits, and for the amount of any judgment against it which might be awarded to Zelma Rector by the District Court. The Ford Company joined in the assertions of Zelma Rector that the Travelers' policy was intended to, and did, cover the tractor-trailer at the time and place of the accident. The Ford Company prayed for judgment against the Travelers and the Hawkeye and for a reformation of the policy "to evidence and establish the true agreement" between the Ford Company and the Travelers.

The Travelers and the Hawkeye, in their pleadings, denied that there was any liability under the policy in suit to either the Ford Company or Zelma Rector.

The issues were tried to the District Court, a jury having been waived. The controlling issues raised by the pleadings and by the evidence, so far as pertinent on this appeal, were: (1) Did the liability insurance policy issued by the Travelers to the Ford Company, in force on September 6, 1937, cover the tractor-trailer while being operated in Louisiana? (2) If the policy did not, by its terms, cover the tractor-trailer while being operated in Louisiana, was the Ford Company entitled to have the policy reformed so as to provide coverage throughout the United States and Canada? The District Court filed findings of fact and conclusions of law, resolving both of these issues in favor of Zelma Rector and the Ford Company, and entered a judgment accordingly, from which this appeal is taken.[1]

The Travelers and the Hawkeye have appealed from the judgment, asserting, in substance, that there was no adequate evidentiary basis for the District Court's determination that the Travelers' liability policy covered the tractor-trailer while being operated in Louisiana on September 6, 1937, or for the Court's conclusion that if, on appeal, the policy were construed as not covering the tractor-trailer at that time and place, the policy should be reformed to provide unlimited coverage in the continental United States and Canada. The appellants (the Travelers and the Hawkeye) also assert that, under the evidence, the tractor-trailer, at the time of the collision, was being operated in an "illicit trade or prohibited trade or transportation" which excluded it from coverage under the terms of the policy.

We must first consider whether there was substantial evidence to sustain the finding of the District Court that the liability policy of the Travelers covered the tractor-trailer at the time and place of the collision. If there was such evidence, then the finding is binding upon us unless it is against the clear weight of the evidence or was induced by an erroneous view of the law. Ætna Life Ins. Co. v. Kepler, 8 Cir., 116 F.2d 1, 4, 5. This Court will not retry questions of fact, Storley v. Armour & Co., 8 Cir., 107 F.2d 499, 513, and it is to be remembered that the power of the trial court to decide such questions is not limited to deciding them correctly. Thompson v. Terminal Shares, Inc., 8 Cir., 89 F.2d 652, 655; Pittsburgh Plate Glass Co. v. National Labor Relations Board, 8 Cir., 113 F.2d 698, 701, affirmed 313 U.S. 146, 61 S.Ct. 908, 85 L.Ed. 1251.

The pertinent history of the policy in suit is as follows: On December 18, 1936, the Ford Company made a written application for a liability policy on a printed form furnished by the Travelers. In its application the Ford Company stated that it occasionally did long distance hauling, that its longest haul in number of miles was 175 to 200, that it operated mostly in Iowa, with occasional trips into Nebraska, that the merchandise hauled was household goods and personal effects, and that the equipment to be insured was one tractor and one trailer operated between Iowa and Nebraska. The insurance was applied for through John N. Eddy, the Travelers' agent in Council Bluffs, Iowa. Pursuant to this application, the Travelers issued to the Ford Company

---

[1] Allied Van Lines, Inc., and its liability insurer, Hartford Accident and Indemnity Company, were involved in the case and are appellees here, but it is unnecessary, in considering the questions presented on appeal, to explain the relation of those parties to this litigation.

liability policy No. 23305 D, in conventional form, with the usual provisions for the investigation and defense of personal injury and death claims and payment of any judgments recovered thereon. The policy covered the equipment described in the application for the term January 1, 1937, to January 1, 1938. The policy contained a "Statement 9", as follows:

"This automobile is principally used at See Territorial Endorsement Attached

(State location and where to be operated)"

The endorsement referred to limited the operation of the equipment described in the policy to the state of Iowa, but permitted the assured "to make occasional trips into adjoining states of not more than 25 miles."

In the policy, under the heading "Conditions, Limitations and Agreements," and opposite a marginal note, "Limitation of Use," appears the following: "This policy does not cover any loss, damage or expense * * * while the automobile insured hereunder is operated, maintained or used (a) beyond the limits of the United States * * * and Canada * * * or (d) in any illicit trade or prohibited trade or transportation * * *."

The policy also contained the following provisions:

"No erasures or change appearing in this policy as originally written, and no alteration, change or waiver of any of its terms, provisions or conditions, shall be valid unless made by written endorsement attached hereto and countersigned by a duly authorized agent of the Company; nor shall notice to or the knowledge of any officer of the Company or of any agent or other person received or acquired before or after the date of this policy be held to effect a waiver, change or alteration of any part of this contract.

* * * * *

"This policy is issued and accepted subject to the conditions, limitations, agreements and representations set forth herein or endorsed hereon, and upon acceptance of this policy the Assured agrees that its terms embody all agreements then existing between himself and the Company or any of its agents relating to the insurance described herein, and no officer, agent or other representative of the Company shall have power to waive any of the terms of this policy unless such waiver be written upon or attached hereto; nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the Assured unless so written or attached. This policy shall be void in event of violation by the Assured of any agreement, condition or representation contained herein or in any rider now or hereafter attached hereto."

It appears that policy No. 23305 D was a renewal of Policy No. 1696 issued by the Travelers to the Ford Company, which policy had the same territorial restriction.

The original of policy No. 23305 D was filed with the Iowa Railroad Commission on December 29, 1936. Copies of the policy were delivered to the Ford Company at its office in Omaha, Nebraska, by Mr. Eddy, and, after some discussion of its terms between R. A. Ford, President of the company, and Eddy, it was accepted and a down payment of premium was made.

The policy as originally written did not cover the tractor-trailer which was later involved in the collision in Louisiana, but that vehicle and other equipment were added by an endorsement dated January 21, 1937, effective January 13, 1937. Thereafter a "corrected" territorial endorsement, effective February 8, 1937, restricting the coverage of the policy to operations within the boundaries of the states of Iowa, Nebraska, and Colorado, was attached to the policy.

The Ford Company had applied to the Interstate Commerce Commission for a certificate authorizing it to operate as an interstate motor carrier in some thirty-one states (including Louisiana) and the District of Columbia. During 1937 the Ford Company was attempting to qualify as a motor carrier under the laws and regulations of the states covered by its application to the Interstate Commerce Commission. In many of these states, evidence that the Ford Company carried liability insurance for the protection of persons and property was required. This necessitated filing with the state authorities a certified copy of the liability policy or a certificate from the Travelers relative to coverage. Mr. Eddy wrote the Travelers about qualifying the Ford Company in states other than Iowa, Nebraska, and Colorado. On July 23, 1937, Fred Miller, manager of the underwriting department of Travelers, wrote Eddy that the Travelers could not file certificates to qualify the Ford Company in states in which the Travelers was not licensed. In reply, Eddy, on July 26, 1937, wrote Miller that he had discussed the letter of July 23 with R. A. Ford, President of the Ford

Company, and that Ford wished the Travelers to "qualify him in as many states as possible." On August 7, 1937, Miller wrote Eddy that the Travelers had filed certificates for the Ford Company to qualify the latter to operate in Iowa, Illinois, Missouri, Kansas, Oklahoma, Nebraska, South Dakota, Colorado, Wyoming and Utah. On September 2, 1937, Eddy wrote Miller as follows: "We are enclosing herewith endorsements required by the public service commission of Alabama on public liability and property damage policies on motor carriers and we will thank you to send us a certified copy of the Ford Bros. policy No. 23305-D with this endorsement attached thereto which will meet the requirements and have the policy signed in your office by one of the executives and send it to us so that we can deliver it to Mr. Ford who in this case wishes to handle the filing himself at the same time that he applies for his permit and files his mileage surety bond."

In response to this letter, a copy of policy No. 23305 D, countersigned by "Fred Miller, Agent," on September 3, 1937, was sent to Eddy. This copy had attached the following certificate:

"This is to certify that this is a true and accurate copy of Policy Number 23305-D issued to Ford Brothers Van and Storage Company of Council Bluffs, Iowa which I have examined this 3rd day of September, 1937.

"M. H. Elkinton
Notary in and for Polk County
"(M. H. Elkinton
Iowa
Notarial Seal)"

M. H. Elkinton was an employee of the Travelers at its home office. This certified copy of the policy was received by Eddy and delivered to the Ford Company on or about September 4, 1937. No endorsement containing territorial restrictions was attached to this certified copy. It contained a "Statement 9" that, "This automobile is principally used at Iowa, Ill., Mo., Kans., Okla., Nebr., So. Dak., Colo., Wyo., Utah, and Ala."

On September 7, 1937, the day after the collision in Louisiana, the Travelers directed its adjuster to pick up the Alabama endorsement and "duplicate copy of the policy as we are not licensed to write business in Alabama and can't file in that state." On September 9, 1937, the adjuster asked the Ford Company to return the certified copy, but the copy had, on September 8,

1937, been mailed to the Probate Judge at Mobile, Alabama, to be filed with the Alabama Public Service Commission. On September 22, 1937, the Probate Judge returned the certified copy to the Ford Company with a letter which he had received from the Alabama Commission and in which the Commission stated that the Travelers was not licensed in Alabama and that the policy was returned therewith.

Eddy, who sold the liability policy to the Ford Company, testified that in December, 1936, when he delivered copies of the original policy to R. A. Ford at Omaha, he called Ford's attention to the restrictive territorial endorsement attached, but told him that this did not affect the coverage of the policy, and that in his (Eddy's) judgment the policy covered the Ford Company's operations anywhere in the United States and Canada; that on or about January 21, 1937, when the tractor-trailer was included in the policy by endorsement, Eddy advised Ford that the policy covered the vehicle wherever it operated in the United States and Canada; that he (Eddy) knew that the Ford Company's trucks would operate between various cities, occasionally being out two or three months, and that the tractor-trailer, later involved in the collision, "would go as far as New York City and occasionally down to the Gulf and sometimes almost up to the Canadian line"; that he thought he communicated that knowledge to Miller, the underwriter for the Travelers, "shortly before or after the January 21, 1937 endorsement" which included the additional equipment in the policy; that he told Miller at that time that "that territorial rider did not limit the coverage and that no such rider bound anybody where the assured had not agreed to it orally or in writing"; that Miller "finally agreed that that probably was the case"; and that he (Miller) said "the policy would cover them any place where the truck would be." Eddy testified that he had been advised by Miller that "they couldn't qualify him [Ford] under his grandfather rights in states where they were not admitted to do business; but they never did tell me they couldn't cover him as far as the protection was concerned in any state."

R. A. Ford, President of the Ford Company, testified that he first talked to Eddy about the policy in suit in December, 1936; that when Eddy delivered the policy he assured Ford that the restrictive territorial endorsement had no bearing on the cov-

erage and that "I was covered throughout the United States and Canada." Ford testified that Eddy "referred back to another item where he read from the policy that assured me that I was covered anywhere I went at any time" [apparently the provision restricting coverage to the continental United States and Canada]; and that when Eddy saw Ford in January, 1937, with respect to adding additional equipment to the policy, their conversation was to the effect that he (Ford) was receiving "nation-wide coverage". Ford testified that he "certainly would not have accepted the endorsement adding the additional equipment and making a large premium if it had not been that kind of coverage"; that he was positive that he had sent trucks or moving vans into Louisiana prior to the date of the accident. Ford also testified that he had no conversations with any representative of the Travelers except Eddy with respect to the policy from the time it was delivered to the date of the accident; that he (Ford) "left it with Mr. Eddy on the basis I should have coverage nation-wide, and he said 'Okey, that is it'"; that Eddy did not tell him that the Travelers could not cover the Ford Company in states where the Travelers was not licensed; that, although Eddy told him that the Travelers could not qualify the Ford Company to operate in Colorado, he (Eddy) explained "that qualifying and coverage was two different things"; that Eddy "never said that the qualification in Colorado voided my coverage"; and that "That was the thing he made very clear to me." Ford also testified that, on or about January 1, 1937, the tractor-trailer involved in the accident was being used on long hauls in interstate business; that at the time he received the certified copy of the policy from Eddy on September 4, 1937, he noticed that a number of states were listed under "Statement 9" of the policy; and that he knew of no restrictive territorial endorsement being attached thereto.

Fred Miller, manager of the underwriting department of the Travelers, testified that he had no conversations with Eddy respecting the coverage of the policy in suit; that he did not tell Eddy that the policy would cover operations anywhere in the United States or Canada, or that the territorial restrictions of the policy were not binding. Miller testified that he supposed that the Travelers could agree to provide coverage in all states regardless of whether or not it was licensed to do business in all of them or whether or not there was compliance with state regulations; and that, under the policy as originally written, the Ford Company was covered in all states adjoining Iowa to the extent of 25 miles from the boundaries of that state, regardless of whether or not "filings" had been made in the adjoining states. With respect to the certified copy of the policy furnished to the Ford Company to enable it to qualify in Alabama, Miller testified that his signature is not on that copy; that he was away from the office of the Travelers when the copy was prepared; that it was customary for copies of policies to be prepared by stenographers under his supervision; that the Travelers retained a full and complete copy of each policy issued by it, in the form of a daily report, to which were attached all subsequent endorsements; that there was a mistake made in the preparation of the copy of the policy in suit on September 3, 1937; that the copy "was authorized at the home office as a certified copy"; that the girls in the office were authorized to send out copies in his absence, but only to states in which Travelers was doing business.

The appellants contend that the certified copy of the policy furnished by the Travelers to the Ford Company for use in Alabama was a nullity, was not evidence of the real contract between the parties, and that the court erred in giving any effect to it. The appellants argue that the copy was ordered for the sole purpose of filing it as a "statutory policy" with the Alabama authorities to qualify the Ford Company to operate in that state, and that, when the copy was rejected, it was without any legal effect. They call attention to the rule that a "statutory policy" does not abrogate the insurance contract entered into by the parties with respect to operations not within the coverage of the statutory policy. See Hawkeye Casualty Co. v. Halferty, 8 Cir., 131 F.2d 294; Foster v. Commercial Standard Ins. Co., 10 Cir., 121 F.2d 117. That rule is of no help to the appellants here if the District Court's finding that the contract of insurance as it existed on September 6, 1937, contained no territorial restrictions, was justified by the evidence.

■■ The claim of the appellants was that the policy on September 6, 1937, contained territorial restrictions excluding operations in Louisiana; but the copy of the policy delivered by the Travelers to the Ford Company on September 4, 1937, and

certified to be true and correct, was inconsistent with that claim. The certified copy was, therefore, competent evidence that the policy as then in force did not restrict coverage to operations in Iowa, Nebraska, and Colorado. See and compare: Xenia Bank v. Stewart, 114 U.S. 224, 229, 5 S.Ct. 845, 29 L.Ed. 101; National Steamship Co. v. Tugman, 143 U.S. 28, 31, 32, 12 S.Ct. 361, 36 L.Ed. 63; Fidelity & Deposit Co. v. Courtney, 186 U.S. 342, 349-351, 22 S.Ct. 833, 46 L.Ed. 1193; Pan American Petroleum & Transport Co. v. United States, 273 U.S. 456, 499, 47 S.Ct. 416, 71 L.Ed. 734; London Guarantee & Accident Co. v. Woelfle, 8 Cir., 83 F.2d 325, 336; Takahashi v. Hecht Co., 60 App.D.C. 176, 50 F.2d 326, 328; General Finance, Inc., v. Stratford, 71 App.D.C. 343, 109 F.2d 843; Milton v. United States, 71 App.D.C. 394, 110 F.2d 556, 560; Fidelity & Casualty Co. of New York v. Martin, 9 Cir., 66 F.2d 438, 440. See, also, Wigmore on Evidence, 3rd Ed., vol. IV, § 1048, p. 2, and § 1053, p. 12; 20 Am.Jur., Evidence, § 600, p. 511. The evidence relative to the circumstances under which the copy was prepared and sent out was for the trial court to consider in estimating the weight of the certified copy as evidence. See and compare London Guarantee & Accident Co. v. Woelfle, 8 Cir., 83 F.2d 325, 336, 337, and cases cited.

■ Undoubtedly, the District Court could have found, from the evidence, that the policy on September 6, 1937, contained the restrictive territorial endorsement, but we think the court was not compelled to make such a finding. The evidence, taking the view of it most favorable to Zelma Rector and the Ford Company, justified the District Court in inferring that the Ford Company and the agent who sold it the liability policy intended that the policy should cover the vehicles described wherever operated in the United States and Canada; that the agent had advised the Travelers that he and the Ford Company so construed the policy; and that the Travelers had, prior to September 6, 1937, discontinued, abrogated, or waived the restrictive territorial endorsement. It is our opinion that the finding of the District Court that the tractor-trailer involved in the collision in Louisiana was not excluded from the coverage of the policy because of territorial restrictions, was, under the evidence, a permissible conclusion, was not "clearly erroneous", and is therefore conclusive on review. The statement contained in the copy of the policy that the equipment covered was "principally used at" Iowa, Illinois, Missouri, Kansas, Oklahoma, Nebraska, South Dakota, Colorado, Wyoming, Utah and Alabama, did not, in terms, limit coverage solely to operations in those states. The statement might reasonably be regarded as descriptive, rather than restrictive. The assured was entitled to the most favorable construction which could fairly be placed upon the statement in the light of the circumstances disclosed by the evidence. See Arbuckle v. (American) Lumbermens Mut. Casualty Co., 2 Cir., 129 F.2d 791, 793; Zurich General Accident & Liability Ins. Co. v. Thompson, 9 Cir., 49 F.2d 860, 861; Peony Park, Inc. v. Security Ins. Co., 137 Neb. 504, 507, 508, 289 N.W. 848.

■ The contention that the tractor-trailer was, at the time of the collision, being used in "illicit trade or prohibited trade or transportation," and was therefore excluded from coverage by the terms of the policy in suit, was apparently not presented to the court below prior to the submission of the case and was not within the issues made by the pleadings. It was incumbent upon the appellants to plead the breach of any of the subordinate provisions of the policy limiting liability, upon which they intended to rely. Kahnweiler v. Phenix Ins. Co., 8 Cir., 67 F. 483; Philip Schneider Brewing Co. v. American Ice-Mach. Co., 8 Cir., 77 F. 138, 145; Mechanics' Ins. Co. v. C. A. Hoover Distilling Co., 8 Cir., 182 F. 590, 597, 31 L.R.A.,N.S., 873; Ocean Accident & Guarantee Corp. v. Southwestern Bell Tel. Co., 8 Cir., 100 F.2d 441, 445, 122 A.L.R. 133; State Farm Mut. Automobile Ins. Co. v. Mackechnie, 8 Cir., 114 F.2d 728, 735; Mutual Life Ins. Co. v. Dingley, 9 Cir., 100 F. 408, 410, 49 L.R.A. 132, reversed on other grounds 184 U.S. 695, 22 S.Ct. 937, 46 L.Ed. 763. See Rule 8(c) and Rule 9(c), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. But if the question of illicit or prohibited operation had been properly presented to the District Court, we think that it would not have been compelled to find that the Louisiana operation was an illicit or prohibited one. The fact that, subsequent to the collision, the Interstate Commerce Commission did not include Louisiana among the states in which the Ford Company was granted authority to operate as an interstate carrier does not, we think, furnish a sufficient basis for a finding that on September 6, 1937, the operation of the

tractor-trailer in Louisiana was "illicit" or "prohibited" within the meaning of the policy in suit.

We express no opinion relative to the question of the sufficiency of the evidence to sustain the District Court's conclusion as to the right of the Ford Company to a reformation of the policy if it should be construed by this Court not to cover the tractor-trailer at the time and place of the collision.

Zelma Rector asserts that this Court should allow her "a reasonable sum as an attorney's fee for the appellate proceedings," under section 44-346 of the Compiled Statutes of Nebraska, 1929. Whether the policy in suit covered the Ford Company's liability to her was, under the evidence, a question which the Travelers and the Hawkeye were warranted in contesting. While we think that the controlling question in the case was, under the evidence, a question of fact for the trial court to determine, and that its determination may not be set aside by this Court, we cannot say that this appeal was not justified. The District Court has allowed substantial attorneys' fees, and we are not disposed to make any further allowance.

The judgment appealed from is affirmed.