## CLEO SYRUP CORPORATION v. COCA-COLA CO.

### No. 12592.

Circuit Court of Appeals, Eighth Circuit.

Dec. 28, 1943.

Writ of Certiorari Denied March 6, 1944.

See 64 S.Ct. 638.

Ralph Kalish, of St. Louis, Mo. (Paul L. Hale, of St. Louis, Mo., on the brief), for appellant.

John A. Sibley, of Atlanta, Ga., and Samuel W. Fordyce, of St. Louis, Mo. (Frank E. Williams, of St. Louis, Mo., Edwin W. Canada, of Atlanta, Ga., Fordyce, White, Mayne, Williams & Hartman, of St. Louis, Mo., and Spalding, Sibley & Troutman, of Atlanta, Ga., and Rogers, Woodson & Rogers, of Chicago, Ill., on the brief), for appellee.

Before SANBORN, WOODROUGH, and RIDDICK, Circuit Judges.

SANBORN, Circuit Judge.

The Coca-Cola Company brought this action against the Cleo Syrup Corporation to enjoin it from infringing the trademark "Coca-Cola" and from engaging in unfair competition, and for damages. The defendant denied the charges of infringement and unfair competition. The District Court's findings were in favor of the plaintiff. The court entered a decree enjoining the defendant from:

"(a) Using in connection with the manufacture, offering for sale, or sale of any soft drink or a syrup for the preparation thereof, or ingredient thereof, or any other merchandise of substantially the same descriptive properties:

"(1) The words Cleo-Cola as now used by the defendant or any like word or words or any colorable imitation of either of them as the words Cleo-Cola are now used and displayed.

"(2) Any name or names, word or words, device or devices, which by reason of the appearance thereof or otherwise, induce, or is likely to induce the belief that defendant's goods emanate from plaintiff, or by its authority or which enables or is likely to enable the passing off of defendant's goods as and for the goods of plaintiff."

The defendant, in appealing from the decree, asserts:

1. "That the phrase Cleo Cola, even as now used and displayed by appellant, is not a colorable imitation of, and does not infringe any trade-mark or good-will rights that appellee may have in, to, or under, the phrase Coca-Cola; and

2. "That the name or phrase Coca-Cola, as used and applied by appellee on and in connection with its soft drink syrup and beverages made therefrom, is inherently false and deceptive and violative of and contrary to the public interest and the public policy of this country—that hence appellee is before this Court with unclean hands and consequently entitled to no consideration, respect, or relief whatsoever."

■ The business, the trade-mark, and the product of the plaintiff are all so well known that they do not require description. The trade-mark "Coca-Cola" has long since come to mean the beverage produced and sold by the plaintiff. To the public generally, the trade-mark means nothing else. The question raised by the defendant's second contention was effectively put to rest by the Supreme Court of the United States in Coca-Cola Company v. Koke Company of America, 1920, 254 U.S. 143, 41 S.Ct. 113, 65 L.Ed. 189, in which that court said (at page 145 of 254 U.S., at page 113 of 41 S.Ct., 65 L.Ed. 189): " * * * Whatever may have been its original weakness, the mark [Coca-Cola] for years has acquired a secondary significance and has indicated the plaintiff's [Coca-Cola Company's] product alone."

And (at page 146 of 254 U.S., at page 114 of 41 S.Ct., 65 L.Ed. 189): " * * * The name [Coca-Cola] now characterizes a beverage to be had at almost any soda fountain. It means a single thing coming from a single source, and well known to the community. It hardly would be too much to say that the drink characterizes the name as much as the name the drink. In other words 'Coca-Cola' probably means to most persons the plaintiff's familiar product to be had everywhere rather than a compound of particular substances. Although the fact did not appear in United States v. Coca-Cola Co., 241 U.S. 265, 289, 36 S.Ct. 573, 60 L.Ed. 995, Ann.Cas.1917C, 487, we see no reason to doubt that, as we have said, it has acquired a secondary meaning in which perhaps the product is more emphasized than the producer but to which the producer is entitled."

See also Dixi-Cola Laboratories v. Coca-Cola Co., 4 Cir., 117 F.2d 352, 354 (certiorari denied 314 U.S. 629, 62 S.Ct. 60. 86 L.Ed. 505). One certainly cannot be charged with misbranding or misdescribing a product by calling it what it is. There is no merit in the contention that a court of equity will not afford protection to the plaintiff's trade-mark or prevent its good will from being nibbled away by unfair competitors.

The defendant since 1935 has been engaged in making and selling a beverage similar in appearance to the plaintiff's product. The defendant's beverage is sold and advertised under the trade name "Cleo Cola".

■ Whether the present dress or make-up of the trade name "Cleo Cola" renders that trade name so similar to the trademark "Coca-Cola" that the former deceives, or will probably deceive, purchasers and cause them to buy the product of the defendant in the belief that it is the product of the plaintiff, is a question of fact. The District Court, which was the trier of the facts, has determined that issue in favor of the plaintiff. This Court, upon review, will not retry issues of fact or substitute its judgment with respect to such issues for that of the trial court. Storley v. Armour & Co., 8 Cir., 107 F.2d 499, 513; Gasifier Mfg. Co. v. General Motors Corporation, 8 Cir., 138 F.2d 197, 199; Travelers Mut. Casualty Co. v. Rector, 8 Cir, 138 F.2d 396, 398. The power of a trial court to decide doubtful issues of fact is not limited to deciding them correctly. Thompson v. Terminal Shares, Inc., 8 Cir., 89 F.2d 652, 655; Pittsburgh Plate Glass Co. v. National Labor Relations Board, 8 Cir., 113 F.2d 698, 701 (affirmed 313 U.S. 146, 61 S.Ct. 908, 85 L.Ed. 1251); Travelers Mutual

418

Casualty Co. v. Rector, supra. In a non-jury case, this Court may not set aside a finding of fact of a trial court unless there is no substantial evidence to sustain it, unless it is against the clear weight of the evidence, or unless it was induced by an erroneous view of the law. Ætna Life Ins. Co. v. Kepler, 8 Cir., 116 F.2d 1, 4, 5; Gasifier Mfg. Co. v. General Motors Corporation, 8 Cir., 138 F.2d 197, 199; Travelers Mutual Casualty Co. v. Rector, supra. The District Court, in making its findings, was under no misapprehension as to the applicable law. See Kann v. Diamond Steel Co., 8 Cir., 89 F. 706, 707; My-T Fine Corporation v. Samuels, 2 Cir., 69 F. 2d 76, 77; Armstrong Paint & Varnish Works v. Nu-Enamel Corporation, 305 U. S. 315, 335, 336, 59 S.Ct. 191, 83 L.Ed. 195. In determining whether there is a sufficient evidentiary basis for the court's findings of fact, we must take that view of the evidence and the inferences deducible therefrom which is most favorable to the plaintiff.

That there is more than a trifling similarity phonetically and otherwise between the trade name "Cleo Cola" and the trade-mark "Coca-Cola", is apparent. Each consists of two four-letter words, each word commencing with the letter "C". Originally the defendant did not simulate the distinctive script of the Coca-Cola trade-mark nor the color scheme used by the plaintiff to display its trade-mark. The defendant originally showed the name "Cleo Cola" upon a label the colors of which consisted of brown, light green, pink or flesh color, and white, the words "Cleo Cola" being shown in white upon a brown background. By successive alterations, the color scheme used by the defendant for displaying the trade name "Cleo Cola" was changed, and the name came to be shown. on its labels and advertising in red lettering upon a white background. At the times the successive changes in color were made, the defendant was familiar with the make-up of the plaintiff's trade-mark and knew that it was shown in red letters on a white background or in white letters on a red background. When the red and white display was first used by the defendant, the lettering or script of the trade-name "Cleo Cola" differed materially from that of the trade-mark "Coca-Cola". Thereafter, however, the defendant, in addition to imitating the plaintiff's color scheme, simulated the distinctive script of the plaintiff's trade-mark, with the flourishes which had always characterized that mark.

The burden was upon the plaintiff to show that the use by the defendant of the trade name "Cleo Cola" was calculated to deceive ordinary purchasers and to create confusion in the trade. Kann v. Diamond Steel Co., 8 Cir., 89 F. 706, 710. The plaintiff could sustain this burden by proving that the accused trade name had actually deceived purchasers, or by demonstrating, through a comparison, that the trade name "Cleo Cola", as made up and displayed by the defendant, was so similar to the trade-mark "Coca-Cola" as to deceive, or to be likely to deceive, purchasers. The record shows the successive changes made by the defendant in the trade name "Cleo Cola" and the full extent to which the defendant has gone in simulating the make-up of the plaintiff's trade-mark. In addition, there is contained in the record the evidence of a number of the plaintiff's investigators who testified that they made visits to various retail soft drink establishments in which they ordered and paid for Coca-Cola and were served with Cleo Cola. The purchases about which they testified were made in taverns, night clubs and the like. The defendant asserts that this evidence is of no probative value, since the number of occasions upon which Cleo Cola was shown to have been passed off as Coca-Cola was relatively small as compared with the total number of calls which the investigators made; since the investigators were not ordinary purchasers and were not deceived; and since the defendant was not responsible for the acts of retail dealers who purchased its product. The evidence tended to show that Cleo Cola was being passed off as Coca Cola, and was relevant to the issue whether the simulation by the defendant of the plaintiff's trade-mark was such as to deceive, or to be likely to deceive, ordinary purchasers with respect to the origin of the defendant's product and to promote confusion. The weight of this evidence and the credibility of the witnesses who gave it were for the trial court to appraise.

There was also introduced by the plaintiff the evidence of numerous housewives, who testified that they had been shown bottles of the defendant's beverage on which were displayed the defendant's trade name, and had been asked whether

they had any thought as to who made the product, and that they had said, "the Coca-Cola Company" or "Coca-Cola people" or "Coca-Cola". It is true that, at the trial, on cross-examination, many of them indicated that their confusion had resulted from the use of the word "Cola" in the defendant's trade name. They admitted the obvious distinction between the words "Cleo" and "Coca", and none testified that they had actually been deceived into purchasing Cleo Cola for Coca-Cola. Nevertheless, we think that this evidence was competent and relevant. It bore upon the issue whether the trade name "Cleo Cola", when dressed in substantially the same raiment as the trade-mark "Coca-Cola", was, or was likely to be, deceptive and confusing.

We think that the District Court was justified in concluding that the trade name "Cleo Cola" as presently made up and used by the defendant is deceptively similar to the trade-mark "Coca-Cola", and that the deceptive similarity was deliberately brought about by the defendant. Men reasonably may be presumed to intend the natural consequences of their acts. This case is closely analogous to that of My-T Fine Corporation v. Samuels, 2 Cir., 69 F.2d 76, 77, in which Judge Learned Hand, speaking of the effect of proof of an intent to copy the make-up of a competitor's trade-mark, said: "* * * But when it [the intent] appears, we think that it has an important procedural result; a late comer who deliberately copies the dress of his competitors already in the field, must at least prove that his effort has been futile. Prima facie the court will treat his opinion so disclosed as expert and will not assume that it was erroneous. Fairbank Co. v. R. W. Bell Mfg. Co., [2 Cir.], 77 F. 869, 877; Capewell Horse Nail Co. v. Green, [2 Cir.], 188 F. 20, 24; Wolf Bros. & Co. v. Hamilton, [8 Cir.], 165 F. 413, 416; Thum Co. v. Dickinson, [6 Cir.], 245 F. 609, 621, 622; Wesson v. Galef, D.C., 286 F. 621, 626. He may indeed succeed in showing that it was; that, however bad his purpose, it will fail in execution; if he does, he will win. Kann v. Diamond Steel Co., [8 Cir.], 89 F. 706, 713. But such an intent raises a presumption that customers will be deceived."

It is a fair inference here, as it was in the case of My-T Fine Corporation v. Samuels, supra, that the defendant copied the make-up of the plaintiff's trade-mark as far as it dared, and further than it should have dared, and that it did this in order to divert customers from the plaintiff. This is an additional reason why such dissimilarities as there are between the name "Cleo Cola" and the trade-mark "Coca-Cola" did not require a finding by the District Court that the defendant's trade name was not deceptively similar to the plaintiff's trade-mark, and why the finding of infringement should be sustained.

The decree appealed from is affirmed.