## SECURITY SHOE SUPPLY CO. v. B. L. MARDER CO.

### No. 5559.

District Court, E. D. Missouri, E. D.

July 19, 1948.

Alfred W. Petchaft, of St. Louis, Mo., for plaintiff.

Edmund C. Rogers and Estill E. Ezell, both of St. Louis, Mo., and Henry Blech and Herman Herson, both of Chicago, Ill., for defendant.

HULEN, District Judge.

Plaintiff is a family partnership consisting of husband, wife and son. Original defendant was Missouri Leather Company, Inc. When this case was called for trial the parties named announced ready. A colloquy between counsel followed resulting in agreement that B. L. Marder Company was the real party in interest and defending the action. Plaintiff then amended its complaint naming B. L. Marder Company as defendant and dismissed as to Missouri Leather Company, Inc. The substituted defendant waived issuance of process, entered its appearance instanter, filed answer, consented to immediate trial, and trial proceeded.

Plaintiff claims sole and exclusive ownership of a trademark "comprising a series of spaced radial lines * * *," to be applied to heel plates and on boxes in which they are packed. The trademark was registered by Leon Weinstein, a member of the plaintiff partnership, with the United States Patent Office, September 15, 1936, under certificate number 338,856, subsequently assigned to plaintiff, which trademark has been continuously used by plaintiff and its predecessor since 1925 in interstate commerce. Defendant, in conventional terms, is charged with infringement.

Defendant denies the charge of infringement. Defendant pleads laches (Ans., par. 8); that radical lines on heel plates were generally adopted long prior to the use by plaintiff or its predecessor (Ans., par. 9); plaintiff uses the word "Sun" as the dominating feature to identify its heel plate, and not radial lines (Ans., par. 10); plaintiff falsely represents, on the boxes containing its heel plates, they are covered by patent.

Leon Weinstein commenced manufacturing heel plates and shipping them in interstate commerce about 1925. Since that time heel plates manufactured by him and plaintiff have carried radial lines. In 1936 Leon Weinstein registered in the United States Patent Office a trademark "for Toe Plates, Heel Plates, and Braces for Shoes * * * the mark comprising a series of spaced radial lines * * *

"The trade-mark is usually applied or affixed to the goods by impressing the same directly thereupon and by also printing the same directly upon the cartons or other packages containing the goods."

The trademark shown by drawing, filed in the Patent Office, contains fifteen radial lines spaced equally. Five of the lines (in the center of the plate) traverse the drawing about half way, five marks on each

side traverse the width of the drawing (heel plate), thus leaving a blank space in the center of the drawing. The blank space remaining has, always since adoption, been used to insert name by which plates are identified by customers. One carton, in which plaintiff packs and ships its plates, and in which they are delivered to customers (Pl. Ex. 20) shows picture of a heel plate with the word "Thrift" plainly appearing in the center of the plate. The trademark appears on the side of the box. Another carton (Def. Ex. D) does not carry the trademark, as such. A picture of a heel plate with radial lines and the word "Sun" in the middle is displayed prominently on the carton. This is an "old" carton, but is still in use by plaintiff.

Heel plates· manufactured by plaintiff (See Pl. Exs. 2 and 3) show radial lines. None of them, apparently, carry fifteen lines as shown in the registered trademark. The ,lines vary from eleven to nineteen. There appears plainly on the heel plates shown on plaintiff's Exhibit No. 2, twelve in number but varying in size, a "U" (or horseshoe) in the center of the heel plate. There appears equally plain in the center of the heel plates shown in plaintiff's Exhibit 3, twelve in number but varying in size, the word "Sun."

The labels for both Sun and Thrift (U, or horseshoe) heel plates were registered in the United States Patent Office in 1933 and 1935, respectively, i.e. "Best Made Heel Plate Under The Sun" and "Thrift Steel-Heel Plates." (See Pl. Exs. 16 and 17.)

Advertising matter used by plaintiff describes one of its heel plates as "Sun" heel plates. Pictures of those plates carrying the word "Sun" imprinted on them and surrounded by radial lines are shown in plaintiff's Exhibit No. 18. Plaintiff's printed matter describes the heel plates with the "U" imprinted thereon surrounded by radial lines as "Thrift Heel Plates." (See Pl. Ex. 19.)

On plaintiff's Exhibit No. 6, an advertising cut with a picture of a heel plate, the word "Sun" appears prominently on it, and under the picture of the heel plate with the word "Sun" appear the words "Best Made Plate Under the Sun—Copyright 1929." Another cut, plaintiff's Exhibit No. 7, bears a similar picture with like language.

In billing purchase of its heel plates plaintiff bills them under the names "Sun" and "Thrift." The billhead of plaintiff carries prominently in the middle a picture of its heel plate with the word "Sun" appearing plainly in the middle with a background indicating rays of the sun. Radial lines appear on the plate.

The weight of the substantial evidence shows that heel plates manufactured by plaintiff and defendant are identified by the manufacturer, jobber, wholesaler and shoe repair shop operator, by name. The plates of plaintiff are identified either as "Sun" plates or "Thrift" plates, as the case may be; the plates of defendant are identified as "Jewel" plates.

Radial lines in some form are common on heel plates and were used in some form, but not the exact form used by plaintiff, prior to plaintiff's adopting their use and manufacturing heel plates.

Heel plates are manufactured by concerns other than plaintiff and defendant and sold in interstate commerce and carry various identifying names. Heel plates other than those manufactured by plaintiff and defendant have radial lines of varying lengths but uniformly in the same general direction with respect to the heel plate. One plate carrying the name "Star" on outside edge, on which there are radial lines, was on the market as early as 1921. The radial lines of this heel plate traverse about one half the width of the plate.

Some of the user public regard radial lines on heel plates as performing a function of preventing slipping. There is no evidence that radial lines actually perform any function connected with use of the plate.

The manufacture and sale of heel plates, as far as identification is concerned of one manufacturer's plate from another, and of plaintiff's from defendant's, extends from manufacturer to jobber or wholesaler and then to the shoe repair shop. There is no substantial evidence the ultimate consumer, on whose shoes the plate is affixed, is

aware there are different kinds of heel plates originating from different manufacturers.

Leon Weinstein went through bankruptcy in 1940. In consideration of a part of his exemption and $150 in cash trustee in bankruptcy transferred to Leon Weinstein the trademark in issue, with other property. No reference in the record of transfer was made to good will of the bankrupt or of the trademark. Certain machinery among the assets of the bankrupt was acquired by the bankrupt through a third party. As the result of these two transactions Leon Weinstein ceased manufacturing heel plates from January to June of 1940. During this period jobbers had a supply of heel plates which were available for the trade. In 1943 Leon Weinstein transferred his title in certain patents and the trademark registered under certificate No. 338,856 to the plaintiff partnership. This latter conveyance included good will.

B. L. Marder is president of defendant company. Prior to 1933 he was employed by Leon Weinstein as sales representative. About 1933 B. L. Marder severed his connection with Leon Weinstein and commenced manufacturing heel plates with the word "Jewel" appearing prominently thereon. Defendant's plate carries nine radial lines equally spaced. Only the two end lines traverse the width of the plate. It is the manufacture and sale of this plate which plaintiff charges infringes its trademark.

Defendant adopted radial lines on its heel plates for appearance and to satisfy the belief of the public that the use of a plate with radial lines prevented slipping. Defendant did not adopt and use radial lines on its heel plates for the purpose of deceiving the public or confusing the public, or palming off its product as being plates manufactured by plaintiff.

In 1932 Leon Weinstein instituted an action in the District Court of the United States for the Northern District of Illinois against defendant charging patent infringement on the heel plate manufactured by Leon Weinstein. No charge of infringement of trademark was included in that action. The case was dismissed in April, 1935, by plaintiff. Defendant has continued to manufacture and sell in interstate commerce Jewel heel plates. Defendant received notice from plaintiff charging infringement of trademark, the subject matter, of this suit, in 1947.

■ The burden is on plaintiff to show that use by defendant of radial lines upon the heel plate manufactured and sold by it was calculated to deceive ordinary purchasers and to create confusion in the trade. Plaintiff could sustain this burden by proving that the use of radial lines by defendant on the heel plate manufactured and sold by it was such a simulation of plaintiff's trademark that its use by defendant had actually deceived purchasers, or by demonstrating through comparison that the trademark consisting of radial lines applied to heel plates, as made up and displayed by defendant, was so similar to plaintiff's trademark as to deceive or to be likely to deceive purchasers.[1]

I.

■ Plaintiff has failed to sustain the burden of proof that the accused trademark, as applied and used by defendant, has actually deceived purchasers or has created confusion in the trade. There is no substantial evidence that any customer was ever actually deceived in purchasing the heel plate carrying radial lines made by the defendant, under the assumption or belief or confusion that it was a heel plate manufactured and sold by plaintiff, because of the presence of radial lines on the heel plate manufactured and sold by defendant, or any other factor. Plaintiff's product is known and identified by plaintiff in the trade and by customers by name Sun or Thrift. Plaintiff, the trade, and customers rely exclusively on name to identify plaintiff's product. The same is true with respect to heel plates manufactured and sold by defendant. The appearance of radial lines on plaintiff's plate not being the means used for identification, the appearance of radial lines on defendant's plate has not deceived any customers or created confusion in the trade, up to and including the shoe repair shop operator, as between

[1] Cleo Syrup Corporation v. Coca-Cola Co., 8 Cir., 139 F.2d 416, 150 A.L.R. 1056.

the heel plate manufactured and sold by plaintiff and the heel plate manufactured and sold by defendant.

## II.

By demonstration through comparison does it appear that the use of radial lines applied by defendant to its heel plates was so similar to plaintiff's trademark as to deceive or to be likely to deceive ordinary customers?

The heel plates when purchased from the jobber or wholesaler by the shoe repair shop are packed in a carton. These cartons are displayed on the jobber's shell, or sales may be made by a salesman. "Sun" heel plates of plaintiff are packed in a dark blue carton with a picture of the heel plate on the front of the carton and the word "Sun" plainly appearing in the picture in the same position as it appears on the plate. "Thrift" heel plates of plaintiff are packed in a carton of the same size as used to pack "Sun" plates but is orange in color. A picture of a heel plate *without radial lines* appears on the front of the carton. The word "Thrift" appears plainly in the picture of the heel plate and underneath picture of this heel plate appears the word "trademark." On the flap of the box appears a picture of the plate with the word "Thrift" and underneath the words "Copyright 1935." On the side of the carton appears a facsimile of the trademark in issue with the number of registration. Defendant's heel plates are packed in a carton red in color. On the front of the carton is a picture of the heel plate with the word "Jewel" in the middle as it appears on the heel plate in actual use. There is a circle near the edge of the picture of the heel plate with short radial lines pointing towards the inside center edge.

We conclude that by demonstration through comparison of defendant's heel plate with radial lines thereon, while still in the carton and as sold to the trade and customers, is not so similar to plaintiff's trademark as to deceive or be likely to deceive customers.

The radial lines on defendant's heel plate as sold are evenly spaced and nine in number. Radial lines on plaintiff's plates are not so uniform in space appearance and differ in number. This we see on close inspection. The dominant identifying feature on comparison is not radial lines but the name in the middle and plainly appearing on each plate.

Taking the record as a whole, the manner in which plaintiff conducted its business, advertised, sold and collected for its heel plates, the many ways in which it stressed the names of its plates, customers would have to be very discerning to be aware plaintiff was the holder of a trademark as shown in its registration. We think the natural result, for which plaintiff alone is responsible, that through the years customers of plaintiff's plates, down to the shoe repair shop, learned to identify and did identify plaintiff's goods by name and not by radial lines.

We find heel plates generally are identified by name, ordered by name, and known in the trade by name.

On this inquiry—whether a comparison of plaintiff's and defendant's heel plates would show defendant's plate would deceive or would be likely to deceive customers and lead them to believe it was plaintiff's plate, because of presence of radial lines—we think the litigation between Leon Weinstein and defendant between 1932 and 1935 has some value, even though slight. If the use of radial lines by defendant on its heel plate was so similar to plaintiff's trademark as to deceive or to be likely to deceive persons in the trade and customers, we think it not beyond the realm of probability that plaintiff Leon Weinstein would have been the first to recognize the basis of defendant's infringement, and while the litigation based on the patents held by plaintiff was pending between plaintiff Leon Weinstein and defendant. As far as the record shows plaintiff made no issue of defendant's use of radial lines on its heel plates. Notice of infringement was not until 1947. What precipitated the 1947 notice does not appear.

Plaintiff has failed to carry the burden of proof by demonstration through comparison that the radial lines appearing in its trademark and on its heel plate, and the radial lines as made up and appearing on defendant's heel plate, or as used by de-

fendant in presenting its heel plates to the public, are so similar as to deceive or to be likely to deceive purchasers to believe plates manufactured and sold by defendant are plates manufactured and sold by plaintiff, or to cause confusion between the two among ordinary customers.

Some of the other points relied on by the defendant raise serious questions but having reached the conclusion indicated we do not deem it necessary to pass on them.

Defendant may present judgment form accordingly.