## COCA–COLA CO. v CLEO SYRUP CORPORATION

### Civil Action No. 1630.

District Court, E. D. Missouri, E. D.

June 24, 1944.

Fordyce, White, Mayne, Williams & Hartman, of St. Louis, Mo., and Spalding, Sibley, Troutman & Brock, of Atlanta, Ga., for plaintiff.

Paul L. Hale, of St. Louis, Mo., for defendant.

HULEN, District Judge.

Plaintiff successfully prosecuted an action against the defendant for infringement of its trade-mark resulting in a decree, by the District Court, entered on the 15th day of December, 1942. Judgment of the District Court, 48 F.Supp. 567, was affirmed by the Court of Appeals on the 28th day of December, 1943, 8 Cir., 139 F.2d 416.

The defendant, in the above entitled cause, has filed a "Motion for Declaratory Decree." In oral argument defendant described his pleading as a "contempt proceeding in reverse." Plaintiff counters with "Answer to Defendant's Motion for Declaratory Decree." Each motion seeks affirmative relief. We shall construe both pleadings as motion to modify, amend and settle the decree in this cause on the additional questions now presented.[1]

We consider this Court now bound by the ruling of the Court in the first instance. See Armstrong v. De Forest Radio Telephone & Telegraph Co., 2 Cir., 10 F. 2d 727, loc. cit. 728;

"As between the parties, whatever was there found is final. The facts as between the parties are not open to further examination, and it is improper to turn either a contempt proceeding or an application for supplemental injunction into an inquiry whether the court was wrong, or whether some hole or omission can be discovered in its opinion. That the matter has been judged is the fundamental fact, but exactly what was adjudged is matter for investigation, not requiring further evidence, but only the record of the opinions. Otherwise there is no end to the suit, and the well-known dictum of Judge Coxe, that 'even patent litigation must come to an end

---

[1] United States v. Swift & Co. et al., 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999; Armstrong v. De Forest Radio Telephone & Telegraph Co., 2 Cir., 10 F.2d 727; Coca-Cola Co. v. Gay-Ola Co., 6 Cir., 211 F. 942.

sometime,' would be even harder to believe than it now is.

"It is not true that the object of a supplemental injunction is to amplify the original one; the object is not to amplify, but to specify, and apply the original injunction to actions and objects nonexistent when the case was decided. The inquiry is whether acts and things that have come into existence since decree would have been enjoined by that decree, had they then existed."

Defendant, by its motion, now seeks a decree holding, that the use by it "in connection with the sale of its product 'Cleo-Cola,' of the labels designated as #1, #2 and #3 is not prohibited by the decrees in this cause," and further that "the use by defendant of its trade name 'Cleo-Cola' in the design used in its label #5 does not infringe plaintiff's trade name 'Coca-Cola.'

Paragraph 15 of the Findings of Fact in this case reads as follows:

"The design and appearance of defendant's successive trade-mark warrants the conclusion that the defendant intentionally by progressive steps altered its original trade-mark for the purpose of simulating and imitating the plaintiff's trade-mark".

Four different trade-marks used at various times by the defendant encompass the "progressive steps" designated in Paragraph 15 of Findings of Fact. Trade-mark #1, #2 and #3, which the defendant now seeks approval of, as not infringing on plaintiff's trade-mark, represents three of the four trade-marks referred to in the Findings of Fact.

■ Trade-marks now referred to in defendant's motion, as #1, #2 and #3 are Exhibits 47, 48 and 49, respectively, offered in the trial of this cause. The defendant interprets the record made in the trial of this cause as showing—"that prior to the trial of this cause, defendant had discontinued the use of the labels designated defendant's labels #1, #2 and #3." Testimony offered at the hearing on the motion has not changed that record, except as to label #3, of which defendant now says it is making some use. There are some outstanding containers of the defendant's product bearing labels #1 and #2 resulting from time required to retire containers of defendant's product through the channels of trade. Since the defendant has discontinued the use of labels #1 and #2, and had done so prior to the trial of this cause,

there appears no reason for a specific ruling on the particular labels, and defendant in that particular presents merely a moot question.

Labels #3 and #5 are in all respects the same labels that were before the Court in the trial of this cause, with the exception that the flourishes or paraphs have been removed in label #5, and label #3 is the same as label #5 except the letters are of an "oriental" design. Label #3 was the last step used by defendant before adopting the label with flourishes in use at time of trial of this cause. The defendant presented in the trial of this cause and requested of the Court Finding of Fact No. 37, which reads as follows:

"#37. That defendant, in its use and manner of display of the phrase 'Cleo Cola' upon or in connection with a syrup and beverages made therefrom, at no time has infringed or trespassed any trade-mark or other right whatsoever of plaintiff, except in using and displaying the phrase 'Cleo Cola' in the specific form with flourishes or paraphs, as in defendant's present label now forming part of Finding of Fact No. 13." (R. p. 2183)

This Finding of Fact was refused by the Court and we consider this a direct ruling on the trade-marks of defendant presented as labels #3 and #5 and that the use by defendant of said trade-marks would be and are infringements on plaintiff's trade-mark.

■ The decree in his cause is a plain mandate that the defendant is enjoined from use by it of the word "Cleo-Cola" as now used by the defendant or any like word or words or any *colorable imitation of either of them,* which by reason of the appearance thereof or otherwise, induces or is likely to induce the belief that defendant's soft drink emanated from plaintiff, or by its authority, or which enables or is likely to enable the passing off of defendant's goods as and for the goods of plaintiff.

The Court cannot escape the conclusion that the defendant has not wholly reconciled itself to the position in which the judgment in this case places it. Defendant's position is aptly described by the following quotation from the case of Broderick & Bascom Rope Co. v. Manoff, 6 Cir., 41 F.2d 353, loc. cit. 354:

"The defendant there, and Manoff here, had organized and *built up a business based upon a fraudulent appropriation of what*

*belonged to the plaintiff.* To permit them to continue without interruption, and to the full scope of identity permitted to *an honest competitor,* would be to preserve for them a good will acquired through fraud. The due protection of trade-mark and similar rights requires that a competitive business, once convicted of unfair competition in a given particular, *should thereafter be required to keep a safe distance away from the margin line—even if that requirement involves a handicap as compared with those who have not disqualified themselves."* (Emphasis added)

As to label #3, and label #5 (the last adopted label of defendant since the trial of this cause), and viewed most favorably to the defendant, it can be said they bear, at least slight resemblance to the trade-mark of plaintiff.

 Testimony offered at the hearing on these motions shows that defendant's product is still being passed off as the product of plaintiff by use of label #3 and #5. See Mishawaka Rubber & Woolen Mfg. Co. v. S. S. Kresge Co., 6 Cir., 119 F.2d 316, loc. cit. 324, where the Court said:

"Where a person uses the business symbol or label of another with the fraudulent purpose of obtaining business which belongs to the other, there will be no injustice if the court assumes the label or symbol so chosen accomplishes the purpose although the resemblance is slight."

Plaintiff seeks a holding that defendant is now infringing its trade-mark and seeks an injunction against any use by defendant of the name "Cleo-Cola."

To the evidence offered by the plaintiff at the hearing on its motion, that defendant's product under the name and labels now used, is still being passed off as the product of plaintiff, defendant in each instance answered that representatives of the plaintiff were not deceived. Such was not the purpose of the testimony. See Kresge Co. et al. v. Winget Kickernick Co. et al., 8 Cir., 96 F.2d 978, loc. cit. 987:

"While there is no evidence here of deception of any customer (the purchases here being by agents of the Winget), yet it is certain that if clerks who sell a product are confused to the point of selling one article for another (as here) such is evidence of the probability of confusion by customers."

From the record made at hearing on motions now before the Court it appears that either the defendant is not in good faith endeavoring to comply with the decree in this cause or that use of the words "Cleo-Cola" by it has become so involved with plaintiff's trade-mark as a result of defendant's conduct in intentionally and by progressive steps altering its original trade-mark for the purpose of simulating and imitating the plaintiff's trade-mark, as to make the continued use by the defendant of the name "Cleo-Cola" impossible and still comply with the decree rendered in this case. In either case plaintiff and the public are entitled to the protection accorded by the decree in this case.

The intention of the decree of December 1942 is to put an end to the unfair competition of defendant with plaintiff and to prohibit the use by defendant of any word, name or device which may assist defendant in making its unfair competition effective.

## UNITED STATES v. BADEN.
### Civ. No. 422.

District Court, N. D. Indiana,
South Bend Division.
Nov. 30, 1943.

Alexander M. Campbell, U. S. Atty., of Fort Wayne, Ind., and James E. Keating,